UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| FORESIGHT COAL SALES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:21-cv-00016-GFVT |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| KENT CHANDLER, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

This case gives the Court a distinct sense of déjà vu.  Although the factual predicate has

changed somewhat over the past year, Plaintiff Foresight Coal Sales, LLC, and the Defendants[1]

are essentially back for round two.  On May 15, 2020, this Court issued a Memorandum Opinion

and Order denying Plaintiff Foresight Coal Sales, LLC's Motion for Preliminary Injunction

because Foresight had failed to show a strong likelihood of success on the merits.  *Foresight*

*Coal Sales, LLC v. Schmitt*, 2020 WL 2513821, at *13 (E.D. Ky. May 15, 2020).  At issue in the

prior case was a regulation the Kentucky Public Service Commission adopted that permitted the

Commission to "evaluate the reasonableness of fuel costs in contracts and competing bids"

without considering any coal severance tax.  *Id.* at *1.

The matters presently before the Court are Foresight's Motion for Preliminary Injunction

---

[1] Originally, the Defendants included Michael Schmitt, Chairman and Commissioner of the Kentucky Public Service Commission; Kent Chandler, Vice Chairman and Commissioner of the Kentucky Public Service Commission; Talina Mathews, Commissioner of the Kentucky Public Service Commission; and Linda Bridwell, Executive Director of the Kentucky Public Service Commission.  However, on September 10, Defendants filed a Notice of Substitution of Parties to replace Michael Schmitt with Kent Chandler, Kent Chandler with Amy Cubbage, and Talina Mathews with Marianne Butler.  [R. 34.]  Linda Bridwell remains the Executive Director of the Kentucky Public Service Commission.  All individuals are being sued in their official capacities.

[R. 20] and Defendants' Motion to Dismiss.[2]  [R. 22.]  Foresight argues that Senate Bill 257, which became law on March 25, 2021, violates the dormant Commerce Clause by discriminating against out of state coal producers from states that do not impose severance taxes.  [R. 1; R. 19.]  The parties agree that the language of S.B. 257 is essentially identical to the language of the regulation at issue in the prior litigation between these parties.  [R. 19 at 26; R. 25 at 6.]  For the following reasons, Defendants' Motion to Dismiss is DENIED and Foresight's Motion for Preliminary Injunction is also DENIED.

## I

Plaintiff Foresight Coal Sales, LLC, is a coal producer that sells coal produced in Illinois.  [R. 19 at 2.]  Foresight directly competes with companies that sell coal produced in Kentucky and other states through the submission of bids in response to requests for proposals from regulated utilities in Kentucky.  *Id.*  Kentucky's Public Service Commission, which is an administrative agency, "directly regulates the award of regulated utilities' coal supply contracts through its laws and regulations, including 807 Ky. Admin. Regs. 5:056, the Fuel Adjustment Clause."  *Id.*

Because of Kentucky's fuel adjustment clause, utilities may "adjust the rates they charge consumers, above or below the utilities' base rates, to account for these ever-fluctuating fuel costs."  *Id.* at 8.  Fuel prices can wildly fluctuate in a short period of time, as can purchase power.  *Id.*  Because of the nature of fluctuating costs, the Commission has broad discretion to regulate the "rates and service of utilities" and determine whether the rates are "fair, just, and reasonable."  [*Id.* (citing KRS § 278.040; KRS § 278.2207); *see also* R. 21 at 4.]

---

[2] Defendants initially filed a motion to dismiss on May 12, 2021.  [R. 18.]  However, Foresight amended its complaint on June 1, and Defendants subsequently filed a motion to dismiss the amended complaint.  [R. 19; R. 22.]  Therefore, Defendants' first motion to dismiss will be denied as moot.

This matter involves Senate Bill 257, which was passed by the Kentucky General Assembly during the 2021 legislative session and signed into law by Governor Andrew Beshear. Senate Bill 257 reads:

> In any review by the commission of any fuel adjustment clause, for any contracts entered into on or after July 1, 2021, the commission shall, in determining the reasonableness of fuel costs in procurement contracts and fuel procurement practices, evaluate the reasonableness of fuel costs in contracts and competing bids based on the cost of the fuel less any coal severance tax imposed by any jurisdiction.

S.B. 257.

The Commonwealth levies a 4.5% severance tax on any coal that is mined within its borders. *See* K.R.S. § 143.020. Illinois, by contrast, does not impose a severance tax on coal producers in Illinois. [R. 19 at 11.] Foresight argues that the impact of S.B. 257 is that if "a Kentucky coal producer bid $50 per ton for a utility contract, while an Illinois coal producer bid $48 per ton…the Kentucky coal producer would appear, artificially, to be the lowest-cost provider." *Id.* at 20. This law, Foresight argues, is aimed at "giving a leg up to Kentucky's coal producers and discouraging utilities from purchasing coal from out-of-state producers." *Id.* at 33. Foresight argues that this new law violates the dormant Commerce Clause facially, purposefully, and in practical effect. *Id.* at 29. Foresight also argues that the law fails the balancing test from *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). [R. 21 at 24.] The parties both agree that the language of S.B. 257 is identical to the language of the regulation at issue in the prior case involving these parties. [R. 19 at 26; R. 25 at 6.] The Court held a motion hearing with the parties on July 23, and the parties have filed their responses and replies with the Court.

**II**

**A**

An initial matter is the question of standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought") (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y.*, 137 S. Ct. at 1651.

Standing is a threshold inquiry in every federal case that may not be waived by the parties. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Planned Parenthood Ass'n of Cincinnati, Inc. v. Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). "To satisfy the 'case' or 'controversy requirement' of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted). Plaintiffs' injury-in-fact must be both particularized and concrete. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). Further, a "concrete" injury is a de facto injury that actually exists. *Id.* Finally, "a plaintiff must also establish, as a prudential matter, that he or she is the proper proponent of the rights on which the action is based." *Haskell v. Washington Twp.*, 864 F.2d 1266, 1275 (6th Cir. 1988) (citations omitted).

4

Here, Defendants argue in their response to the preliminary injunction motion that Foresight lacks standing for three reasons: (1) Foresight has failed to establish that an injury is "certainly impending;" (2) Foresight cannot "manufacture standing" by inflicting harm on itself based on a hypothetical fear of future harm; and (3) Foresight's alleged harm is not fairly traceable to S.B. 257.  [R. 25 at 9–15.]  In reply, Foresight argues that it does have a certainly impending injury, that Foresight's argument regarding economic loss and competitive disadvantage are sufficient to both establish injury and to confer standing, and finally that the altered marketplace because of S.B. 257 has created a sufficient injury to confer standing.  [R. 29 at 2–6.]

Here, Foresight has established standing in this case for many of the same reasons Foresight established standing in the prior litigation.[3]  First, Defendants argue that Foresight has failed to establish an injury in fact because they have not demonstrated that their injury is "certainly impending."  [R. 25 at 9.]  However, Foresight states that 807 KAR 5:056(3)(5) caused the Commission to begin "singling out severance taxes as an individual input."  [R. 29 at 3.]  Foresight argues that this constituted a "substantial shift in the agency's operating procedure" and caused Foresight to have to alter its bidding practices as a result.  [R. 29 at 3.]  Given that the parties agree that the language of S.B. 257 is identical to the now-withdrawn 807 KAR 5:056(3)(5) regulation, the Court finds that Defendants' first argument is without merit.

*Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656 (1993), is instructive.  In *Northeastern Florida*, the plaintiffs brought an equal protection

---

[3] Defendants once again argue that the law does not "directly regulate any of the market participants or those with whom the market participants do business."  [R. 25 at 10.]  However, as the Court previously held, although it is "substantially more difficult" to establish standing "when a plaintiff is not himself the object of the government action or inaction he challenges," Foresight has established standing by alleging both a constitutional violation and economic harm stemming directly from the regulation, and now S.B. 257.  *Foresight Coal Sales, LLC*, 2020 WL 2513821, at *5 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

challenge against a city ordinance that gave preferential treatment to minority-owned businesses

in awarding city contracts.  The Supreme Court wrote:

> When the government erects a barrier that makes it more difficult for members of
> one group to obtain a benefit than it is for members of another group, a member
> of the former group seeking to challenge the barrier need not allege that he would
> have obtained the benefit but for the barrier in order to establish standing. The
> "injury in fact" in an equal protection case of this variety is the denial of equal
> treatment resulting from the imposition of the barrier, not the ultimate inability to
> obtain the benefit.... And in the context of a challenge to a set-aside program, the
> "injury in fact" is the inability to compete on an equal footing in the bidding
> process, not the loss of a contract.

*Id.* at 666.  "Courts have applied [*Northeastern Florida*'s] 'equal footing' doctrine to find

standing where plaintiffs challenge state laws they allege are discriminatory under the

dormant Commerce Clause."  *Byrd v. Tenn. Wine and Spirits Retailers Ass'n*, 2017 WL

1021296, at *2 (M.D. Tenn. Mar. 16, 2017) (citing cases from the Ninth Circuit and the

Seventh Circuit applying the *Northeastern Florida* equal footing test to the dormant

Commerce Clause context).  Here, Foresight is alleging that they cannot "compete on an

equal footing in the bidding process" because of S.B. 257.  *Northeastern Florida*, 508

U.S. at 666.  Therefore, the Court finds that Foresight has sufficiently established injury

in fact.

Next, Defendants argue that Foresight has inflicted harm on itself because of fear of

hypothetical future harm.  [R. 2 at 13.]  However, Foresight argues that rather than inflicting

harm on itself, S.B. 257 (and the regulation before) has compelled Foresight to change its

behavior because S.B. 257 has skewed the marketplace and promoted discrimination in favor of

state interests in violation of the dormant Commerce Clause.  [R. 29 at 7.]  Foresight's argument,

that S.B. 257 has created a discriminatory environment that benefits in-state actors at the expense

of out-of-state actors, directly implicates S.B. 257 and the Commission, not self-inflicted harm.

6

*See E. Ky. Res. v. Fiscal Court of Magoffin Cnty.*, 127 F.3d 532, 540 (6th Cir. 1997) ("The purpose of the Commerce Clause is to prohibit outright economic protectionism or regulatory measures designed to benefit in-state economic actors by burdening out-of-state actors."). Therefore, Foresight has established standing as to this argument.

Finally, Defendants argue that any alleged harms are not fairly traceable to S.B. 257.  [R. 25 at 14.]  However, the Court finds that Foresight has sufficiently demonstrated that its injuries are fairly traceable to S.B. 257, and therefore the Commission.  First, the plain language of the statute mandates that the commission, when evaluating the reasonableness of fuel costs, subtract any coal severance tax imposed by any jurisdiction.  This subtraction of coal severance taxes is precisely what Foresight is alleging creates the discrimination and economic harm in this case, and therefore Defendants' argument attempting to distance S.B. 257 and the commission from Foresight's alleged harm is without merit.  Furthermore, if the Commission determines a fuel charge is unreasonable, there is a mandatory penalty, which would directly impact Foresight and is fairly traceable to S.B. 257 and the Commission.  *See* 807 Ky. Admin. Reg. 5:056 § 3(1).

Ultimately, "[s]tanding is not intended to be a particularly high bar; instead, the doctrine serves to prevent a litigant from raising another's legal right."  59 Am. Jur. 2d *Parties* § 29 (2020).  Accordingly, Foresight has met the threshold inquiry of standing, and the Court will proceed to the merits.

## B

### 1

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint.  In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in

favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation

omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual

inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). The

Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th

Cir. 2009).

Moreover, the facts that are pled must rise to the level of plausibility, not just possibility;

"facts that are merely consistent with a defendant's liability ... stop[ ] short of the line between

possibility and plausibility." *Iqbal*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. 544 at

557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Long v. Insight Comm. of Cent. Ohio, LLC*, 804 F.3d 791, 794 (6th Cir. 2015) (quoting *Iqbal*,

556 U.S. at 678).

**2**

Here, the parties disagree over whether Defendants' motion to dismiss is procedurally

proper. Foresight argues in response to Defendants' motion to dismiss that the Defendants are

attempting to dismiss various legal theories or parts of Foresight's claims at the 12(b)(6) stage,

which they are not permitted to do. [R. 28 at 7.] Foresight argues that "as long as the plaintiff

can, in response to a motion to dismiss, identify some plausible theory that would entitle it to

relief on its claim, that claim may move forward and a motion to dismiss other legal theories

must be denied." *Id.* (quoting *KFC Corp. v. Iron Horse of Metaire Rd., LLC*, 2020 WL 3892989,

at *3 (N.D. Ill. July 10, 2020)).  In reply, Defendants argue that Foresight alleges four separate legal theories in their complaint, and that if Foresight's argument is accepted, it will "open the door to burdensome discovery regarding legally meritless grounds for relief."  [R. 31 at 2.] Defendants also attempt to distinguish the legal authority Foresight relies on from this case and point to Sixth Circuit jurisprudence[4] about Rule 54(b) to argue that Foresight's "four separate legal theories" are in fact separate claims under the Federal Rules of Civil Procedure.  *Id.* at 3.

Determining what constitutes a "claim" can be a difficult undertaking.  *See In re Fifth Third Early Access Cash Advance Litigation*, 925 F.3d 265, 273 (6th Cir. 2019).  In the Rule 54(b) context, the Sixth Circuit has applied the "operative facts" test, which defines a claim as "the aggregate of operative facts which give rise to a right enforceable in the courts even if the party has raised different theories of relief."  *Id.* (quoting *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 442 (6th Cir. 2004)); *Zidek v. Analgesic Healthcare, Inc.,* 2014 WL 2566527, at *2 (N.D. Ill. June 6, 2014) ("a claim is a set of facts producing an injury") (*citing N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992)).  Thus, there is a difference between "claims," defined above, and "counts," which "describe legal theories by which those facts purportedly give rise to liability and damages."  *Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 338 F. Supp. 3d 875, 882 (N.D. Ill. 2018) (citing *ACF 2006 Corp. v. Mark C. Ladendorf, Attorney at Law, P.C.*, 826 F.3d 976, 981 (7th Cir. 2016)).

The "claim" proffered by Foresight is that S.B. 257 harms Foresight by protecting in-state interests at the expense of out-of-state coal producers in states that do not levy a coal severance tax.  And Foresight's primary legal theory, which gives rise to liability and damages, is that S.B. 257 violates the dormant Commerce Clause by way of 42 U.S.C. § 1983.  Ultimately,

---

[4] *Planned Parenthood Southwest Ohio Region v. DeWine*, 696 F.3d 490, 500 (6th Cir. 2012).

to prevail on a 12(b)(6) motion, Defendants must "show that none of the legal theories [Foresight] advance[s] against them, or any other legal theory, plausibly establishes a right to relief for the harm alleged." *Zurbriggen*, 338 F. Supp. 3d at 882; *see also Iqbal*, 556 U.S. at 678.

The Sixth Circuit has described dormant Commerce Clause analysis as a "two-step inquiry," the first step of which involves "determining whether the statute directly burdens interstate commerce or discriminates against out-of-state interests." *E. Ky. Res.*, 127 F.3d at 540. As discussed above, the Supreme Court has determined that a statute "can discriminate against out-of-state interests facially, purposefully, or in practical effect." *Id.* (citing *Wyoming v. Oklahoma*, 502 U.S. 437, 454–55 (1992)). However, even if a statute is not discriminatory in the three aforementioned ways, the Court must then proceed to the second step, which is the *Pike* balancing test. *Id.* Under *Pike*, a "statute is valid unless the burdens on interstate commerce are "clearly excessive in relation to the putative local benefits." *Id.* (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

Here, although Defendants argue that Foresight fails to satisfy the first step of the dormant Commerce Clause analysis, Defendants completely ignore the second step of the dormant Commerce Clause analysis in their motion to dismiss. Thus, by only addressing half of the two-step inquiry, Defendants do not meet their burden of showing that the dormant Commerce Clause claim fails to plausibly establish "a right to relief for the harm alleged." *Zurbriggen*, 338 F. Supp. 3d at 882. However, even if Defendants had addressed the *Pike* analysis in their motion to dismiss, it would be difficult to make a *Pike* test determination at this early stage in the litigation. *See Huskey*, 666 F.3d 455 (Hamilton, J. concurring) ("The *Pike* test thus requires a state agency to mobilize personnel, resources, and evidence to justify its policies, and often to do so where good evidence may be hard to come by.")

10

At this point in the litigation, the Court finds that Foresight's claim that S.B. 257 harms Foresight by protecting in-state interests at the expense of out-of-state coal producers in states that do not levy a coal severance tax is plausible. Although Foresight faces an uphill battle in demonstrating that the law facially or purposefully discriminates, as discussed below, it is plausible that additional discovery may demonstrate that S.B. 257 violates the dormant Commerce Clause, particularly in effect or under the *Pike* test.[5]

Perhaps sensing this outcome was likely to occur, Defendants provide in a footnote that if the motion to dismiss is denied, "nothing prevents the Defendants from immediately filing a summary-judgment motion on the same grounds." [R. 31 at 6 n.4.] Though additional discovery may be necessary in this case, Defendants' footnote is procedurally correct, and the two motions differ in how a court may analyze claims and portions of claims. *See, e.g.*, *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (comparing a motion to dismiss under 12(b)(6) which "doesn't permit piecemeal dismissals of *parts* of claims" with Rule 56, which allows parties to identify claims or defenses, or parts of claims or defenses, on which summary judgment is sought).

Although Foresight has not demonstrated that it is entitled to the extraordinary remedy of a preliminary injunction, as addressed in greater detail below, Foresight has established a plausible right to relief, which is all that is required to withstand a Rule 12(b)(6) motion. Therefore, Defendants' motion to dismiss will be denied.

---

[5] The Court is cognizant, however, that courts within the Sixth Circuit rarely invalidate a law under the *Pike* test. *See Garber*, 888 F.3d at 845 ("Keep in mind that the Court has not invalidated a law under *Pike* balancing in three decades.").

## C

### 1

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (cleaned up) ("[A] preliminary injunction involv[es] the exercise of a very far-reaching power ....")).  To issue a preliminary injunction, the Court must consider: 1) whether the movant has shown a strong likelihood of success on the merits; 2) whether the movant will suffer irreparable harm if the injunction is not issued; 3) whether the issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuing the injunction.  *Overstreet*, 305 F.3d at 573.

The Court of Appeals clarified that, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). However, even if the plaintiff is unable "to show a strong or substantial probability of ultimate success on the merits" an injunction can be issued when the plaintiff "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

**2**

Article I of the United States Constitution states, in part, that "Congress shall have the Power … To regulate Commerce with foreign Nations, and among the several States." *E. Ky. Res.*, 127 F.3d at 539 (quoting U.S. Const. Art. I, § 8 cl. 3).  Although the text of the Commerce Clause is "an affirmative grant of power to Congress," the Commerce Clause "has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce," and this is known as the dormant Commerce Clause.  *Id.* (quoting *South-Central Timber Dev. Inc. v. Wunnicke*, 467 U.S. 82, 82 (1984)).  Under the dormant Commerce Clause, "if a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose." *Tenn. Wine and Spirits Ret. Ass'n v. Thomas*, 139 S. Ct. 2449, 2461 (2019).  The purpose of the dormant Commerce Clause is to restrict state protectionism.  *Id.*; *see also E. Ky. Res.*, 127 F.3d at 540.

Evaluation of claims under the dormant Commerce Clause involves a two-step inquiry. "To determine whether a statute violates the Commerce Clause, this Court must first determine whether the statute discriminates against interstate commerce, either by discriminating on its face, by having a discriminatory purpose, or by discriminating in practical effect." *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 431–32 (6th Cir. 2008).  "If the statute is not discriminatory, it is valid unless the burdens on interstate commerce are clearly excessive in relation to the putative local benefits." *Id.* (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970)).

Foresight argues in its Preliminary Injunction motion that S.B. 257 violates the dormant Commerce Clause facially, purposefully, in practical effect, and that S.B. 257 fails the *Pike*

balancing test because the law "seems to *harm* local interests, not benefit them." [R. 21 at 17, 25.] Defendants, in their Motion to Dismiss Foresight's Amended Complaint, argue that Foresight has failed to adequately allege discrimination under the dormant Commerce Clause facially, purposefully, or in practical effect. Although Defendants fail to address Foresight's *Pike* argument in their motion to dismiss, Defendants do argue in their response to Foresight's Preliminary Injunction that Foresight failed to adequately address the *Pike* balancing test. [R. 22 at 6; R. 25 at 28–29.] At the preliminary injunction stage, the determinative question is "whether the movant has shown a strong likelihood of success on the merits." *Overstreet*, 305 F.3d at 573. Here, Foresight can demonstrate a strong likelihood of success on their dormant Commerce Clause challenge if they can demonstrate that the law discriminates facially, purposefully, in practical effect, or fails the *Pike* balancing test.

**a**

Foresight argues that S.B. 257 is facially discriminatory "because it creates a favored bloc of states that employ a particular tax scheme." [R. 21 at 17.] "State laws that discriminate on their face against interstate commerce are presumptively invalid." *E. Ky. Res.*, 127 F.3d at 540 (citing *Ore. Waste Sys. Inc. v. Dep't of Envtl. Quality of Ore.*, 511 U.S. 93, 99–100 (1994)).

Foresight once again relies on *New Energy Co. of Ind. v. Limbach* to argue that S.B. 257 "expressly favors coal producers from certain states" and is therefore facially discriminatory. 486 U.S. 269, 274 (1988). However, as the Court previously explained, there are several key differences between *Limbach* and the case presently before the Court. First, the *Limbach* regulation granted a tax credit to ethanol producers in Ohio, to the exclusion of producers of ethanol in every other state, unless that state granted a reciprocal tax credit to Ohio. *Schmitt*, 2020 WL 2513821, at *9. Here, the law does not award tax credit and there is no quid pro quo

14

element to the law.  Second, there is no monetary benefit to Kentucky should any other states decide to enact, modify, or repeal their severance taxes.  *Id.*  Finally, the law applies to any jurisdiction that imposes a coal severance tax and therefore is not discriminatory on its face.  *Id.*

Foresight does briefly make two additional arguments that were not directly advanced in the prior litigation.  First, Foresight argues that the Commission "freely admits" that S.B. 257 "orders differential treatment of the same freely traded good…based solely on…the state of production."  [R. 21 at 19.]  However, Foresight fails to mention the subsequent clarification that the Commission "qualif[ied] this testimony to explain that the regulation applied with regard to the severance tax."  [R. 25 at 18.]  This clarification severely undercuts Foresight's argument by clarifying that the law is not focused on the state of production, but rather on the basis of the severance tax.

Next, Foresight cites to *Daghlian v. DeVry University, Inc.*, 582 F. Supp. 2d 1231 (C.D. Cal. 2007), which is a nonbinding case with a different factual predicate.  *Daghlian* involved school accreditation standards that only applied to certain states and territories within a particular geographical region whereas the law here operates exactly the same regardless of the state in question.  Any state is free to impose or remove severance tax rates at its discretion, and there is no carrot and stick coercion at issue with this law.  In fact, a number of states other than Kentucky, including Montana, West Virginia, and Wyoming, impose a coal severance tax.  [R. 25 at 2 (citing state statutes).]  S.B. 257 asks the Commission to evaluate competing bids not on the basis of the state of origin but instead based on the cost of the fuel "less any coal severance tax imposed by *any* jurisdiction."  S.B. 257; *cf. Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*, 903 F.3d 903, 911 (9th Cir. 2018) (finding that a law did not facially discriminate because it discriminated "against fuels based on lifecycle greenhouse gas emissions, not state of origin").

15

Accordingly, the Court finds at this stage in the proceedings that S.B. 257 does not discriminate on its face.

<strong>b</strong>

Next, Foresight argues that S.B. 257 purposefully discriminates because "it was passed with the intent to favor Kentucky coal producers to the detriment of out of state coal producers." [R. 21 at 20.]  "When a party seeks to present circumstantial evidence of discriminatory purpose pursuant to a dormant Commerce Clause challenge, it is the duty of that party to show the effect of that evidence on the challenged statute." *E. Ky. Res.*, 127 F.3d at 543.  Furthermore, "[t]he party challenging the validity of the regulation has the burden of demonstrating that the regulation has a discriminatory purpose." *Id.* at 542.  In the prior case, Foresight relied exclusively on statements made by Chairman Schmitt regarding proposed regulation language that was not enacted, and this Court found that the proffered evidence was not sufficient to demonstrate a discriminatory purpose.  *Schmitt*, 2020 WL 2513821, at *10.

Here, Foresight links S.B. 257 to previous failed legislation, H.R. 144, and points to statements made by Senator Robby Mills, Representative Jim Gooch, and Representative Norma Kirk-McCormick as evidence that the law has a discriminatory purpose.  [R. 21 at 21–22.] However, "[t]he Commerce Clause regulates effects, not motives, and it does not require courts to inquire into voters' or legislators' reasons for enacting a law that has a discriminatory effect." *Comptroller of Treasury of Md. v. Wynne*, 575 U.S. 542, 561 n.4 (2015); *see also Isle Royale Boaters Ass'n v. Norton*, 330 F.3d 777, 784 ("We are wary of relying on individual legislators' statements, because individual statements are often contradicted or at least undermined by other statements in the legislative record.").  Here, the concerns of the judges in *Isle Royale* regarding the subjective nature of individual legislators' statements are realized in this case.  While

16

Foresight points to the statements of one senator and two representatives in arguing that the purpose of the law was to discriminate, Defendants point to statements by two other lawmakers who stated that they considered the implications of the dormant Commerce Clause before voting for the bill, and one legislator specifically emphasized on the House floor that "we understand that these types of laws cannot run afoul of interstate commerce." [R. 25 at 26.] Ultimately, the statements of a few legislators in this case, out of a total of 138 lawmakers, does not definitively point to a discriminatory purpose in S.B. 257. *Isle Royale*, 330 F.3d at 784.

Foresight also argues that H.B. 144 was a precursor to S.B. 257 and had a clearly discriminatory purpose. [R. 25 at 24.] However, as the Defendants argue, H.B. 144 was a nonbinding resolution that was passed in one chamber two years before S.B. 257 went into effect. H.B. 144 therefore holds little weight in determining whether S.B. 257, which passed both the Kentucky House and Senate and was signed by the governor, has a discriminatory purpose.

A better way to determine the purpose of a statute than looking at the statements of a select few legislators is to look to the language of the statute itself. *See E. Ky. Res.*, 127 F.3d at 542 ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."). The language of the statute as written does not consider the coal-severance tax of any state when conducting its reasonableness review. This language is neutral, applies equally to all states, and does not particularly single out Kentucky. Furthermore, despite Foresight's arguments regarding the Commission's efforts related to prior regulations and statutes, the Commission "played no role in the passage of SB 257," took no position on the bill, declined to send a representative to testify to the Senate regarding the bill, and "never expressed an opinion one way or another" about S.B.

17

257.  [R. 25 at 25.]  After reviewing the record, at this early stage in the proceedings, the Court

finds that S.B. 257 does not have a discriminatory purpose.

c

Foresight next argues that S.B. 257 discriminates in effect because "it incentivizes

utilities to purchase coal from producers in severance-tax states."  [R. 21 at 22.]  Foresight

specifically argues that S.B. 257 will cause utilities to "alter their conduct in response to the new

law" and that history from the identically worded regulation instructs that utilities will alter their

behavior in response to the law.  *Id.* at 23–24.  The Sixth Circuit has explained that "[t]here are

two complementary components to a claim that a statute has a discriminatory effect on interstate

commerce: the claimant must show both how local economic actors are favored by the

legislation, and how out-of-state actors are burdened by the legislation."  *E. Ky. Res.*, 127 F.3d at

543.

Here, Foresight's argument that S.B. 257 discriminates in effect fails for several reasons.

First, as the Court previously held, there simply is not enough evidence in the record to properly

ascertain whether S.B. 257 will disadvantage states that do not impose severance taxes.  *See

Schmitt*, 2020 WL 2513821, at *12.  Foresight points to the now repealed regulation and the fact

that utility companies "altered their behavior in response" to the regulation to argue that the same

thing will happen with S.B. 257.  [R. 19 at 36.]  However, Defendants argue that the

Commission never actually applied the regulation, so any actions taken by utility companies

were anticipatory and not based on actions taken by the Commission.  [R. 25 at 19.]  Given the

short period of time that the regulation was in place before it was repealed, it is difficult to

ascertain how the prior regulation will inform S.B. 257.

Furthermore, after the passage of S.B. 257, cost is only one factor that the Commission

18

analyzes when conducting its reasonableness inquiry, and it is unclear at this early stage how S.B. 257 will affect the reasonableness analysis of fuel costs in contracts and bids. *Id.* at 20. It is obvious that cost is an important factor in the reasonableness analysis. However, the Commission is required to conduct a "holistic" review, and on at least one occasion, chose to purchase coal that was more expensive based on "other considerations." *Id.* at 21. Ultimately, the law does not favor in-state coal producers over similarly situated out-of-state coal producers. *O'Keeffe*, 903 F.3d at 915; *see also Exxon Corp. v. Gov. of Md.*, 437 U.S. 117, 126 (1978) ("The fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce.").

Although time may ultimately prove Foresight to be correct about the effects of S.B. 257, the principles of federalism instruct that a federal court should be reticent to enjoin a state law before the effects of that law have been borne out, except in the most extreme circumstances. "Unless a baleful outcome is either highly likely or ruinous even if less likely, a federal court shall allow a state law . . . to go into force…and the principles of federalism should allow the states that much leeway." *Planned Parenthood of Ind. & Ky., Inc. v. Box*, 949 F.3d 997, 998 (7th Cir. 2019) (Easterbrook, J., concurring in the denial of rehearing en banc). Ultimately, it would be imprudent to grant Foresight's preliminary injunction motion at this early stage, and the Court declines to find at this time that S.B. 257 discriminates in effect.

### d

Foresight's final argument is that S.B. 257 fails the *Pike* balancing test because the law appears to harm local interests by "requir[ing] utilities to pay higher prices for energy." [R. 21 at 25.] In response, Defendants argue that Foresight's two-paragraph *Pike* balancing test argument appears to be an afterthought and relies exclusively on speculation and conjecture. [R. 25.]

Ultimately, the Court is not convinced that at this early stage in the litigation Foresight has satisfied the *Pike* inquiry.  Admittedly, the *Pike* inquiry is difficult, and some have questioned whether the *Pike* inquiry should be undertaken at all.[6]  Given the difficulty of the *Pike* inquiry, "courts have held that the party challenging the law bears the responsibility of proving that the burdens placed on interstate commerce outweigh the law's benefits…and have turned away challengers who failed to meet that responsibility."  *Garber v. Menendez*, 888 F.3d 839 (6th Cir. 2018).  Here, Foresight's *Pike* analysis consists of two paragraphs and speculates about harm to Kentucky consumers.  This brief analysis and speculation on the part of Foresight is not sufficient to satisfy the *Pike* test.  *Lebamoff Enterprises, Inc. v. Huskey*, 666 F.3d 455, 469 (7th Cir. 2012) (Hamilton, J. concurring) ("Speculation is not enough to show real benefits to weigh against the burdens on Commerce Clause plaintiff.")  Therefore, at this early stage in the litigation, the Court finds that Foresight has failed to provide more than conjecture, and this is simply not enough to invalidate the law under *Pike* balancing.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss **[R. 18]** is **DENIED AS MOOT**;

2. Foresight's Motion for Preliminary Injunction **[R. 20]** is **DENIED**; and

3. Defendants' Motion to Dismiss **[R. 22]** is **DENIED**.

This the 3rd day of November, 2021.

---

[6] "[The *Pike*] inquiry is ill suited to the judicial function and should be undertaken rarely if at all."  *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 95 (1987) (Scalia, J., Concurring).

Gregory F. Van Tatenhove
United States District Judge