UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| FORESIGHT COAL SALES LLC, | ) |
| Plaintiff, | ) Civil No. 3:21-cv-00016-GFVT |
| v. | ) |
| KENT CHANDLER, *in official capacity as Chairman and Commissioner of Kentucky Public Service Commission, et al.*, | ) **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

"Dormant Commerce Clause jurisprudence is famously complex." *Foresight Coal Sales, LLC v. Chandler*, 60 F.4th 288, 295 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 80 (2023). But the issues presented here are relatively straightforward. Because the Sixth Circuit has spoken clearly as to the discriminatory purpose and effect of SB 257, Foresight Coal Sales LLC's Motion for Summary Judgment **[R. 96]** is **GRANTED**.

**I**

Foresight Coal Sales LLC sells coal produced in Illinois.[1]  [R. 19 at 2.]  Against the backdrop of an "increasingly competitive interstate [coal] market," Foresight competes with other producers for supply contracts with Kentucky utility companies. *Id.* at 2, 10, 11. The contracts are awarded through a bidding process: Foresight and its competitors submit bids to the

---

[1] For the sake of simplicity and consistency, the facts recounted here are taken from this Court's previous orders at R. 73 and R. 93.  In February 2024, United States Magistrate Judge Atkins granted Foresight's request to stay discovery on SB 257's "practical effects" pending resolution of Foresight's Motion for Summary Judgment. [R. 97.] The reason for the request was that discovery on the law's practical effects might prove to be superfluous, given the "potentially dispositive" nature of the instant Motion for Summary Judgment on "facial and purposeful discrimination[.]"  [R. 91.]

utilities for evaluation, and the utilities purchase from the most competitive bidders. *Id.* at 2.

The Kentucky utilities are regulated by the Kentucky Public Service Commission (the "PSC"). *Id.* Pursuant to this regulatory relationship, the PSC conducts periodic evaluations of the "reasonableness" of the rates that utilities charge consumers. [R. 63 at 2.] The cost paid for coal is a crucial factor considered by the PSC on reasonableness review. *Id.* at 2–3. Based on various disincentives doled out to utilities with "unreasonable" rates, the utilities are incentivized to "buy cheaper coal." *Id.* at 3.

While Kentucky imposes a 4.5% severance tax on its coal producers, Illinois imposes no severance tax. [R. 19 at 11.] Kentucky's Senate Bill 257 (SB 257), signed into law in 2021, directs the PSC to "artificially discount the price of Kentucky coal by 4.5% of the value of the coal upon extraction—the amount of Kentucky's severance tax." [R. 73 at 2.] *See* Ky. Rev. Stat. Ann. § 143.020. The law's practical effect is that a Kentucky coal producer receives an artificial 4.5% deduction in the cost it submits to utilities during the bid process. *Id.* at 1–2. But a producer from a state with no severance tax (such as Illinois) is not granted the deduction. *Id.*

By enacting and enforcing this scheme, Foresight argues, Kentucky flouts the dormant commerce clause prohibition on discrimination against out of state suppliers. [R. 19.] In November 2021, this Court denied Foresight's request for a preliminary injunction. [R. 36.] Foresight appealed, [R. 39], and the United States Court of Appeals for the Sixth Circuit reversed and remanded. [R. 63]; *Foresight Coal Sales, LLC v. Chandler*, 60 F.4th 288 (6th Cir. 2023). Following the Sixth Circuit's guidance, this Court then preliminarily enjoined the PSC from enforcing SB 257. [R. 73.] In October 2023, The United States Supreme Court declined to review the Sixth Circuit's decision. [R. 84]; *Chandler v. Foresight Coal Sales, LLC*, 144 S. Ct.

80 (2023).  Then, in February 2024, Foresight Coal Sales LLC moved for summary judgment.[2] [R. 95; R. 96.]  In its Motion, Foresight additionally requests a permanent injunction and declaratory relief.  [R. 95.]

## II

Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  "[T]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).  "Instead, 'the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.'"  *J.B-K.-1 v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 462 F. Supp. 3d 724, 731 (E.D. Ky. 2020), *aff'd sub nom. J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721 (6th Cir. 2022) (quoting *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe."  *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

---

[2] The Plaintiff has requested oral argument on its Motion.  Because the Court does not find oral argument to be necessary, it will deny the request.  Further, Plaintiff represents that it plans to file a request for attorney fees under 42 U.S.C. § 1988.

3

functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

## A

### 1

The United States Constitution grants Congress the power "[t]o regulate Commerce . . . among the several states[.]" U.S. Const. art. I § 8, cl. 3. In addition to this "affirmative grant," the Commerce Clause "goes further" by "impos[ing] limitations on [] states." *Foresight Coal Sales, LLC*, 60 F.4th at 294–95 (internal citations omitted). "This negative, or dormant, Commerce Clause requires courts to preserve the 'free flow of interstate commerce,' with the aim of preventing the 'economic Balkanization' that plagued the early colonies[.]" *Id.* As a practical matter, "two principles guide the courts in adjudicating cases challenging state laws under the [dormant] Commerce Clause." *S. Dakota v. Wayfair*, 585 U.S. 162, 174 (2018).

"First, state regulations may not discriminate against interstate commerce[.]" *Id.* at 173. "'[D]iscrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 99 (1994). A state law that discriminates face[s] "'a virtually *per se* rule of invalidity.'" *Granholm v. Heald*, 544 U.S. 460, 476 (2005) (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978)); *see also Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 518 (2019) ("[I]f a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to 'advanc[e] a legitimate local purpose.'").

4

"[S]econd, States may not impose undue burdens on interstate commerce." *Wayfair*, 585 U.S. at 173. This prohibition on undue burdens applies even to "facially neutral" laws. *Granholm*, 544 U.S. at 477; *see also Or. Waste Sys., Inc.*, 511 U.S. at 99 ("[N]ondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970))). "Consistent with these principles . . . the first step in analyzing any law subject to judicial scrutiny under the negative Commerce Clause is to determine whether it 'regulates evenhandedly with only incidental effects on interstate commerce, or discriminates against interstate commerce.'" *Or. Waste Sys., Inc.*, 511 U.S. at 99.

**2**

The Sixth Circuit has already found that SB 257 discriminates against interstate commerce. *Foresight Coal Sales, LLC*, 60 F.4th at 297. In holding that Foresight Coal Sales was likely to prevail on the merits of its suit, the Sixth Circuit reasoned:

> SB 257's text requires the Commission to discount coal that has paid severance taxes. Quite plainly then, the statute demands that coal from non-severance taxing states (e.g., Illinois) be treated one way, and coal from severance-taxing states (e.g., Kentucky) another. Even coal from the various severance-taxing states is given further disparate treatment, depending on the amount of each state's tax. Thus, applying SB 257 starts *and* ends with the state. The fact of the severance tax is, therefore, a near perfect proxy for the coal's state of origin.

*Id.* (emphasis in original). As a consequence, the Sixth Circuit found, "[w]hether labeled as 'facial' or 'in effect' discrimination, SB 257 discriminates against out-of-state coal." *Id.* And "to the extent that a protectionist purpose" was a prerequisite for a finding of discrimination, the Sixth Circuit "f[ound] that too." *Id.* at 296.

5

Perhaps recognizing the clarity of the Sixth Circuit's determination, Defendants ask this Court not to follow it. [R. 101.] On their view, The Sixth Circuit's opinion does not qualify as the "law of the case." *Id.* at 5–12. Even if it did, they argue, the Supreme Court's subsequent decision in *National Pork Producers Council v. Ross* renders the Sixth Circuit's finding inapposite. 598 U.S. 356 (2023); [R. 101 at 9–12.] Finally, Defendants rehash arguments about facial discrimination while urging further discovery on SB 257's practical effects. [R. 101 at 12–14.] The Court is not persuaded by any of these arguments.

### B

### 1

First, the Sixth Circuit's Opinion is the law of the case. "The law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (quoting *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006)). The doctrine "is primarily 'intended to enforce a district court's adherence to an appellate court's judgment[.]'" *Id.* (quoting *Miller v. Maddox*, 866 F.3d 386, 390 (6th Cir. 2017)). However, it "applies only to issues that were actually decided, whether explicitly or by necessary implication." *Id.* (quoting *Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017)).

"[W]hen a court reviewing the propriety of a preliminary injunction issues a fully considered ruling on an issue of law with the benefit of a fully developed record, then the conclusions with respect to the likelihood of success on the merits are the law of the case[.]" *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015). Still, ascertaining whether a panel's preliminary injunction ruling is the law of the case is "tricky." *Id.* "Rulings on preliminary

6

injunctions are generally 'tentative decision[s] on the merits,' which 'change[ ] the incentives of the parties that inform their litigation strategies.'" *Id.* (internal citation omitted).

Accordingly, Courts addressing the issue might consider whether the panel's decision-making process was informed by the benefit of a full factual record and briefing, or whether it was burdened by "unusual time constraints." *Daunt*, 999 F.3d at 309 (quoting *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012)). "Ultimately, [a court] must ask whether 'the appellate panel considering the preliminary injunction has issued [a] fully considered appellate ruling on an issue of law.'" *Id.* at 308 (quoting *Howe*, 801 F.3d at 740). If the answer is yes, then the district court's task is clear: apply that decision "'in subsequent stages in the [] case.'" *Id.* (internal citation omitted).

**2**

Such is the case here. First, the appellate Panel ruled on an issue of law. As the Panel explained: "the district court's determination that SB 257 likely doesn't have a discriminatory effect (*i.e.*, that it does not treat out-of-staters worse than in-staters) is a *legal* error that we review de novo." *Foresight Coal Sales, LLC*, 60 F.4th at 298–99 (emphasis added). The Sixth Circuit's review of the statutory framework yielded the conclusion that the law discriminates:

> Here, Kentucky artificially discounts its own coal, and coal from other severance-tax states, by the amount of the tax. Because non-severance-tax state coal gets no such discount, the effect is to make Illinois coal relatively more expensive. That, in turn, will cause Illinois coal either to lose market share or to lower its price. Either way, Illinois coal is worse off as a matter of basic economics and Supreme Court precedent. And either result is sufficient to find discrimination.

*Id.* at 299 (internal citation omitted). Because the statute requires that coal from a non-severance taxing state be treated differently from coal from severance taxing states (e.g., Kentucky), the Panel reasoned, its application "starts *and* ends with the state." *Id.* at 297 (emphasis in original). That makes the severance tax "a near perfect proxy for the coal's state of origin." *Id.*

Ultimately, the Panel passed on the question whether the near perfect proxy demanded a finding of facial unconstitutionality. *Id.* Although that question was "interesting[,]" it was "ultimately unimportant" because the law was discriminatory regardless. *Id.*

### 3

Second, the Panel's Opinion was fully considered. The appellate record reveals that the parties fully briefed and argued the issue. [App. R. 16; App. R. 17; App. R. 20; App. R. 21; App. R. 26.] The Panel heard oral argument on June 7, 2022. [App. R. 22; App. R. 26.] It considered each side's positions and issued a thorough eighteen-page Opinion on February 3, 2023. [App. R. 31.] The United States Supreme Court denied a petition for writ of certiorari on October 2, 2023. [App. R. 34.]

The Panel specifically explained that further factual development was not necessary to find in effect discrimination. Moreover, it expressly rejected this Court's prior conclusion that it could not find in effect discrimination without a more developed factual record. *Foresight Coal Sales, LLC*, 60 F.4th at 299–300 ("The district court may well be right that the *amount* of loss is still unknown. But 'the magnitude and scope of the discrimination have no bearing on the determinative question whether discrimination has occurred.'") (emphasis in original) (internal citation omitted).

### C

Next, Defendants assert that the Sixth Circuit's reasoning is rendered inapposite following the Supreme Court's 2023 decision in *National Pork Producers Council v. Ross*. 598 U.S. 356 (2023). Specifically, the Defendants argue that a purposefully discriminatory law does not violate the Commerce Clause unless the law has "substantial" negative effects on interstate commerce. Citing the *Pike* balancing test, they appear to surmise that such laws pass

8

constitutional muster when they have only a "de minimis" impact on interstate commerce. *See generally Pike*, 397 U.S. at 137.

But this argument confuses the analyses applicable to discriminatory laws and evenhanded laws that incidentally affect interstate commerce, respectively. As the Sixth Circuit has explained, (post-*National Pork Producers*) a dormant commerce clause inquiry *begins* with the question whether the challenged law discriminates. *See Truesdell v. Friedlander*, 80 F.4th 762, 768 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 1344 (2024), and *cert. denied*, 144 S. Ct. 1346 (2024). If this question is answered in the negative, *then* the court moves on to a *Pike* balancing analysis. *See id.* ("If a law does not discriminate [], a court must ask at step two whether it nevertheless inflicts a substantial harm on interstate commerce. If so, the law may still violate the Commerce Clause if its interstate burden[s] clearly exceed its local benefits under . . . *Pike*[.]" (citing *Nat'l Pork Producers Council*, 598 U.S. at 385–86 and *Pike*, 397 U.S. at 142) (internal quotation marks omitted)). *National Pork Producers* did not alter this two-part inquiry. Accordingly, the Court will reject Defendants' argument because it rests on an improper conflation of the test's two steps.[3]

In any case, the Sixth Circuit was "skeptical" of the idea that a purposefully discriminatory law could withstand constitutional scrutiny as a practical matter. *See Foresight Coal Sales, LLC*, 60 F.4th at 296 n.1 ("It's hard to 'imagine a case in which a state legislature intended to discriminate against interstate commerce but did not make that purpose clear in the statute (and thereby did not facially discriminate) and also failed to achieve that purpose (and

---

[3] Furthermore, the petitioners in *National Pork Producers* "conceded that California's law does not implicate the antidiscrimination principle at the core of this Court's dormant Commerce Clause cases[.]" *Nat'l Pork Producers Council*, 598 U.S. at 371. As a result, they were "left to pursue two more ambitious theories." *Id.*

9

thereby did not discriminate in effect).'" (quoting *Wynne v. Comptroller of Md.*, 228 A.3d 1129, 1142 n.28 (Md. 2020))).

Defendants are of course correct that "a law's practical effects may also disclose the presence of a discriminatory purpose." *Nat'l Pork Producers Council*, 598 U.S. at 377. But here, the Sixth Circuit has *already found* a discriminatory purpose. And *National Pork Producers* did not alter the applicable two-step inquiry. *See Truesdell*, 80 F.4th at 768 (applying the "two step[]" inquiry post-*National Pork Producers*).

**D**

For similar reasons, the Court will reject the argument that summary judgment would be premature before discovery on the law's practical market effects. First, the Sixth Circuit has already rejected this line of reasoning. *See Foresight Coal Sales, LLC*, 60 F.4th at 300 ("[T]he magnitude and scope of the discrimination have no bearing on the determinative question whether discrimination has occurred.") (internal citation omitted).

Second, discriminatory laws "are 'virtually per se' invalid[.]" *Foresight Coal Sales, LLC*, 60 F.4th at 304 (internal citation omitted). Such a law "can be sustained only on a showing that it is narrowly tailored to advanc[e] a legitimate local purpose." *Thomas*, 588 U.S. at 518 (internal citation omitted); *see also Oregon Waste Sys., Inc.*, 511 U.S. at 101. When the Sixth Circuit rendered its decision, "the Commission ha[d] proffered no explanation for SB 257 except that it is designed to nullify the competitive disadvantages created by Kentucky's severance tax." *Foresight Coal Sales, LLC*, 60 F.4th at 304. That is not a legitimate local purpose. And because the Commission has not offered any other explanation, the Sixth Circuit's reasoning remains applicable. Accordingly, the Court finds that that SB 257 unconstitutionally discriminates against interstate commerce.

**E**

Finally, Foresight Coal asks the court to permanently enjoin enforcement of SB 257. [R. 95 at 1.] A plaintiff seeking a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998) ("Where the plaintiff establishes a constitutional violation after a trial on the merits, the plaintiff will be entitled to permanent injunctive relief upon showing 1) a continuing irreparable injury if the court fails to issue the injunction, and 2) the lack of an adequate remedy at law."). Notably, the Court has already resolved the preliminary injunction factors in favor of Foresight. [R. 73.]

First, a constitutional violation establishes irreparable injury. *See ACLU v. McCreary Cnty.*, 354 F.3d 438, 445 (6th Cir. 2003) ("[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."). Money damages would be inadequate to compensate for that harm. *See Doe v. Kentucky ex rel. Tilley*, 283 F. Supp. 3d 608, 615 (E.D. Ky. 2017). The balance of hardships also militates in favor of the injunction. *See id.* ("While the Commonwealth would presumably be harmed if the enforcement of a *constitutional* law were enjoined, the statutes discussed in this case have already been deemed unconstitutional.") (emphasis in original). Finally, "enjoining an unconstitutional law furthers the public interest." [R. 73 at 3]; *see Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982) ("It is in the public interest not to perpetuate the unconstitutional application of a statute.").

11

Accordingly, the Court will grant the requested permanent injunction. But, consistent with this Court's previous ruling, it will limit "the scope of the injunction to . . . the parties before the Court." [R. 73 at 4]; *see Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) (opining that universal injunctions "prevent[] legal questions from percolating through the federal courts, encourag[e] forum shopping, and mak[e] every case a national emergency for the courts and for the Executive Branch.").

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Foresight Coal Sales LLC's Motion for Summary Judgment **[R. 95; R. 96]** is **GRANTED**;

2. Foresight Coal Sales LLC's Request for Injunctive and Declaratory Relief is **GRANTED;**

3. Pursuant to Federal Rule of Civil Procedure 65, and for the reasons above, the Defendants are hereby permanently **ENJOINED** from enforcing Senate Bill 257, codified as Ky. Rev. Stat. Ann. § 278.277, against Plaintiff Foresight Coal Sales pending further order of the Court;

4. SB 257 is hereby **DECLARED** unconstitutional; and

5. Within the next 30 days, the parties are **DIRECTED** to indicate whether they wish to brief any outstanding fee issue under 42 U.S.C. § 1988.

This the 24th day of September, 2024.



Gregory F. Van Tatenhove
United States District Judge

12